IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| YVONNE TATE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:13-cv-185 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Yvonne Tate's application for benefits. In accordance with the analysis below, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED AND REMANDED**.

## BACKGROUND

Plaintiff applied for Title II benefits in November 2008, alleging disability due to "heart and kidney problems," as well as "back pain, neck pain, hand numbness, and shortness of breath." (Pl.'s Br., Doc. 13, p. 4). Although the Commissioner determined that Plaintiff was "disabled," she also determined that Plaintiff's disability did not begin until March 3, 2010. Plaintiff, at her administrative hearing, alleged an earlier onset date of October 25, 2008, and Plaintiff's claims in the instant appeal all relate to that earlier date. (R. 32-33). Specifically, Plaintiff argues that records from Caduceus Occupational Medicine ("Caduceus"), to which the reviewing administrative law judge ("ALJ") failed to assign weight, compel a finding of "disabled" during the relevant period. Because the ALJ should have accorded substantial or considerable weight to the Caduceus records absent clearly-articulated good cause to the

1

contrary, and because this Court may not uphold the ALJ's decision on the basis of post-hoc rationalizations, Plaintiff's case must be reversed remanded to the Commissioner for further proceedings.

## STANDARD OF REVIEW

The courts have a narrow role in reviewing claims brought under the Social Security Act. Judicial review is limited to a determination of whether the Commissioner's decision is supported by "substantial evidence," as well as whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).

"Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Rather, courts may only scrutinize the record to assess the reasonableness of the Commissioner's factual findings. *Id.* Even if the evidence in the record preponderates against the Commissioner's decision, that decision must be affirmed if it is supported by substantial evidence.

The courts review questions of law *de novo*, and the Commissioner's "[f]ailure to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982). *But see Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a Social Security appeal).

## EVALUATION OF DISABILITY

Persons are "disabled" for the purposes of receiving benefits under the Social Security Act if they are unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

When evaluating a claimant's alleged disability, the Commissioner typically follows a five-step "sequential evaluation process." 20 C.F.R. § 416.920(a)(4). At step one, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. At step two, the Commissioner determines whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement. This step has been described as a "reasonable administrative convenience designed to screen out groundless claims," *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987), and the Eleventh Circuit has repeatedly noted that the failure of an ALJ to find a *particular* impairment "severe" at step two is generally harmless because "the finding of *any* severe impairment whether or not it results from a single severe impairment or a combination of impairments . . . is enough to satisfy step two." (*Heatley v. Comm'r*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)) (punctuation omitted).

At step three, the Commissioner determines whether the claimant's impairments meet or equal the severity of one or more of the "listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, the claimant is "disabled." If not, the Commissioner assesses the claimant's residual functional capacity ("RFC"), and then proceeds to step four where, she evaluates the claimant's

ability to perform past relevant work. At step five, the Commissioner evaluates the claimant's ability to adjust to "other work." A finding, at either step four or step five, that a claimant is capable of working precludes a finding of "disabled."

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the ALJ in Plaintiff's case made the following findings. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 25, 2008, her alleged onset date. (R. 15). At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments: "Obstructive sleep apnea; High blood pressure; Carpal Tunnel syndrome; Enlarged Heart; Degenerative cervical disc disease; and[] Obesity." (R. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the "listings" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform:

> light work . . . with the need for a sit/stand option to alternate between sitting or standing up to once every 1/2 hour; stand and walk a total of 4 out of 8 hours; occasionally climb, balance, kneel, stoop, crouch, or crawl with no overhead work, frequent but not constant handling, fingering, and feeling[]; no concentrated exposure to excessive pulmonary irritants; and[] no work on ladders, ropes, scaffolds or unprotected heights.

(R. 16)

Based on this RFC assessment, the ALJ found, at step four, that Plaintiff was unable to perform any of her past relevant work. (R. 20). At step five, however, the ALJ found that Plaintiff could perform the requirements of representative occupations such as "Order Caller," "Marker," and "Laundry Sorter." (R. 21). Therefore, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act.

**STEP-TWO FINDINGS**

Plaintiff first argues that the ALJ erred at step two by failing to find that Plaintiff suffered from "severe" lumbar spine problems, breathing problems, and lower-extremity pain and swelling. (Pl.'s Br., Doc. 13, pp. 15-19; Reply, Doc. 18, pp. 4-5). As noted above, though, the failure by an ALJ to label an impairment "severe" at step two is not generally grounds for reversal. *See Heatley v. Comm'r*, 382 Fed. App'x 823, 824-25 (11th Cir. 2010) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While it is true that an ALJ's failure to identify an impairment at step two may evidence the ALJ's failure to consider that impairment at later steps, *see, e.g.*, *Lucky v. Astrue*, 331 Fed. App'x 634, 640 (11th Cir. 2009), Plaintiff did not make this argument,[1] and the record would not support such an argument. (R. 18-19).

**THE CADUCEUS OCCUPATIONAL MEDICINE RECORDS**

Plaintiff's second argument relates to medical records from Caduceus Occupational Medicine ("Caduceus"), where Plaintiff received treatment related to a workplace injury from April 2003 until August 2005. (Exs. 12F, 13F). Some of the Caduceus records expressly limited Plaintiff to pushing, pulling and lifting a maximum of only ten pounds. (R. 390, 392-93, 405, 408, 415, 423-24, 426-27). This ten-pound exertional limitation was based, in part, on a diagnosis of bilateral carpal tunnel syndrome. (R. 390). If accepted as valid, the ten-pound exertional limitation advised by Caduceus would have limited Plaintiff to only "sedentary work" under the applicable regulations. 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds . . ."). Additionally, because Plaintiff was found not to have skills transferrable to sedentary work, (R. 50), and because "most unskilled sedentary jobs require good use of both hands," *Foote v. Chater*, 67 F.3d 1553, 1559-60 (11th Cir. 1995) (quoting

---

[1] Plaintiff's step-two argument is largely a summary of the relevant medical evidence, which this Court may not weigh or re-weigh. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

5

S.S.R. 83-12), it is not at all clear that Plaintiff would have been capable of performing sedentary work during the relevant period—the period between October 25, 2008 and March 3, 2010.[2]

The ALJ in Plaintiff's case did not expressly evaluate the Caduceus records, and he also implicitly rejected those records by failing to account for the ten-pound exertional limitation in Plaintiff's RFC. (R. 16-17). Rather than limiting Plaintiff to sedentary work, as at least some of the Caduceus records appear to require, the ALJ determined that Plaintiff was limited to and could perform modified light work. 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). In doing so, the ALJ erred.

There is no dispute among the parties that the Caduceus records are, in fact, the records of a "treating source." (Resp., Doc. 16, p. 9). Similarly, the Commissioner does not appear to contest the notion that the Caduceus records, if given the substantial or considerable weight ordinarily accorded to treating sources,[3] would limit Plaintiff to a "sedentary" exertional capacity. Instead, the Commissioner, who acknowledges the ALJ's failure to weigh the Caduceus records, argues that "the Caduceus opinions are not entitled to the special weight generally afforded a treating source opinion." (Resp., Doc. 16, p. 9). The Commissioner supports this assertion by noting that the Caduceus records pre-date Plaintiff's alleged onset date of October 25, 2008 by over three years, and also by noting that there was "no indication by the Caduceus physicians that [the ten-pound exertional] restrictions were to remain permanent." (Resp., Doc. 16, p. 10). The Commissioner also cites, as evidence of either medical improvement

---

[2] Plaintiff also argued that, given her age—Plaintiff was born on November 29, 1955—she could not have performed sedentary work under the Medical-Vocational Guidelines or "grids." (Pl.'s Br., Doc. 13, p. 14). Because the Commissioner, on remand, should (i) weigh the Caduceus records; and (ii) reevaluate Plaintiff's exertional capacity; and because the Commissioner may determine that Plaintiff was capable of performing greater than "sedentary" levels of exertion during the relevant period, it is not recommended that the Court address Plaintiff's "grid" argument.

[3] *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

6

or of the invalidity of the ten-pound exertional limitation, the fact that Plaintiff (a) was working during the period she received treatment at Caduceus; (b) continued working until October 2008, when she was included in a general layoff; and (c) received unemployment benefits until July 2009, and therefore held herself out as being able to work up to that date.

All of these factors—the date and relevance of the Caduceus records, Plaintiff's prior work history, and Plaintiff's receipt of unemployment benefits[4] after her alleged onset date—should have been expressly considered by the ALJ in determining what weight to accord the Caduceus records. Although it is possible that such factors might have justified a decision to accord the Caduceus records only reduced weight rather than the substantial or considerable weight ordinarily accorded to treating sources, this Court may not now make such a determination based on the Commissioner's post-hoc rationalizations. *See, e.g., Nyberg v. Comm'r of Soc. Sec.*, 179 Fed. App'x 589, 590-92 (11th Cir. 2006) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely") (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). Rather, because the ALJ did not expressly evaluate potentially determinative medical evidence, and because this Court may not weigh that evidence, Plaintiff's case must be remanded.

## MOTION TO SUPPLEMENT THE RECORD

Also pending before the Court is a "Motion to Alter or Amend Pursuant to Federal Rule of Civil Procedure 59(e),"[5] (Doc. 20), in which the Commissioner asks the Court to amend an

---

[4] *See, e.g., Moore v. Atrue*, 2013 WL 1661435 at *7-8 (N.D. Ala. 2013) (citing cases from several circuits, and noting that the "receipt of unemployment benefits may be consistent with a finding of disability").

[5] The Commissioner's Motion should be construed as a request for relief under Rule 60 ("Relief From a Judgment or Order").

Order instructing the Commissioner to supplement the administrative record. (Doc. 19). In that Order, the Court noted that Exhibit 17F, labeled "Office Treatment Records . . . from Dr. Oyekunle Muraina," actually contains records from a different doctor, Dr. Chukwuemeka Nwabuebo. (Doc. 19, p. 1). Exhibit 16F, which also contains records from Dr. Chukwuemeka Nwabuebo, is properly labeled "Office Treatment Records . . . from Dr. Chukwuemeka Nwabuebo," and it appears that the records properly filed under Exhibit 16F were also redundantly filed under Exhibit 17F in place of the proper records from Dr. Oyekunle Muraina.

The Commissioner argued, and continues to argue, that the missing records[6] from Dr. Muraina constitute "new evidence," and therefore that the Court may consider them only for the limited purposes of remanding under "sentence six." (Doc. 15, p. 2; Doc. 20, p. 3). New evidence, however, is evidence "presented for the first time in the district court." *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1267 (11th Cir. 2007). There is no indication that Plaintiff failed to submit Dr. Muraina's records in the administrative proceedings below, as both the ALJ's "List of Exhibits" and the Commissioner's "certified transcript" both list Dr. Muraina's records under Exhibit 17F. (Doc. 11-1, p. 3; R. 27). In other words, even if the ALJ did not have before him Dr. Muraina's records at the time of his decision, the fault appears to lie with the Commissioner and not with Plaintiff. *Cf. Ingram*, 496 F.3d at 1267-69 (explaining that remand under sentence six is appropriate when evidence that was not properly before the Commissioner is submitted for the first time to a federal court, but that remand under sentence four is appropriate when the Commissioner fails to adequately consider properly-submitted evidence).

---

[6] Some of Dr. Muraina's records may be found in Exhibit 1F. Regarding those records, the Commissioner acknowledges that they "cannot be grounds for remand under sentence six." (Doc. 15. p. 3).

In this case, though, neither the records of Dr. Muraina nor those of Dr. Chukwuemeka were at issue given the grounds for relief raised by Plaintiff. Accordingly, the Commissioner's pending Motion is **DISMISSED** as **MOOT**. Given the fact that social security claimants are generally allowed to submit new evidence at any stage of the administrative process, *Ingram*, 496 F.3d at 1261 (citing 20 C.F.R. § 404.900(b)), it should not matter, on remand, whether the Commissioner corrects the record herself or allows Plaintiff to resubmit the missing records from Dr. Muraina.

## CONCLUSION

After careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED**, and that Plaintiff's case be **REMANDED** to the Commissioner for further proceedings. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 22nd day of July, 2014.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge